# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| JANE DOE, on behalf of herself and all others similarly situated, <br><br>        Plaintiff, <br><br> vs. <br><br> 10TH STREET TAVERNS INC., d/b/a/ RED DOG CAFE, RAYMOND MACKEY, and JASON MACKEY, <br><br>        Defendants. | ) <br> ) <br> ) <br> ) Case No.  CIV-17-188-M <br> ) <br> ) <br> ) **COMPLAINT - HYBRID CLASS** <br> ) **ACTION AND COLLECTIVE ACTION** <br> ) <br> ) **DEMAND FOR JURY TRIAL** <br> ) <br> ) <br> ) <br> ) |

Plaintiff, Jane Doe, on behalf of herself and all others similarly situated, alleges as follows against Defendants 10th Street Taverns Inc., d/b/a Red Dog Cafe ("Red Dog"), Raymond Mackey ("R. Mackey"), and Jason Mackey ("J. Mackey")[1]:

## INTRODUCTION

1.     Plaintiff brings this action seeking declaratory, injunctive, and monetary relief against the Defendants for their unlawful misclassification of employees as "independent contractors."

2.     The Class that Plaintiff seeks to represent is composed of female employees who, during the relevant time-period, worked as exotic dancers (hereafter "Dancers") at Red Dog, a club located at 6417 NW 10th St., Oklahoma City, Oklahoma.

---

[1] Hereafter collectively referred to as the "Defendants."

3.      Plaintiff contends that Defendants violated both state and federal wage laws by willfully failing to pay the Dancers their earned wages, causing them financial loss and injury.

4.      Specifically, Plaintiff alleges that Defendants intentionally misclassified employee-dancers as "independent contractors" in a scheme to evade the payment of wages to Dancers.

5.      Additionally, Plaintiff contends that Defendants imposed unlawful tip sharing requirements by forcing Dancers to share their gratuities with the Defendants and other employees working at the nightclub.

6.      Plaintiff brings this action against Defendants, seeking back pay, restitution, liquidated damages, injunctive and declaratory relief, civil penalties, prejudgment interest, attorneys' fees and costs, and any and all other relief that the Court deems just and reasonable under the circumstances.

7.      Applying the actual economic reality test that governs employee/independent contractor determinations, all Dancers in the Class have been misclassified as independent contractors.

8.      Since at least 2001, Oklahoma courts have applied the "economic reality test" to determine the existence of an employer-employee relationship within the state of Oklahoma. *See Washington v. Cornell Corr., Inc.,* 2001 OK CIV APP 102, ¶ 2, 30 P.3d 1162, 1163.

9.      Additionally, Federal courts across the country have held that the economic reality test demonstrates that dancers at nightclubs are employees under the Fair Labor

Standards Act (the "FLSA"). *See e.g., Clincy v. Galardi S. Enterprises, Inc.*, 808 F. Supp. 2d 1326 (N.D. Ga. 2011); *McFeeley v. Jackson St. Entm't, LLC*, 825 F. 235 (4th Cir. 2016); *Verma v. 3001 Castor, Inc.*, CIV.A. 13-3034, 2014 WL 2957453 (E.D. Pa. June 30, 2014).

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1332 because this action involves a federal question, specifically 29 U.S.C. § 216(b).

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391  in that many of the acts and transactions giving rise to this action occurred in this District and because Defendants:

   a.   are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution and sale of their products and/or services in this District;

   b.   do substantial business in this District; and

   c.   are subject to personal jurisdiction in this District.

## PARTIES

12.     At all times relevant to this matter, Plaintiff resided and continues to reside in this District and was an employee of the Defendants as defined in 29 U.S.C. § 201 *et seq.* and O.S. tit. 40, § 165.01(2) and worked as an exotic dancer at Defendants' nightclub.

13.     Plaintiff worked continuously during the class period, beginning in 2011 and until February of 2017.

14.     Throughout the course of her employment, Plaintiff, like all other class members, was: (1) misclassified as an independent contractor; (2) deprived of wages and other benefits, and (3) required to split tip income with Defendants and other employees of the nightclub.

15.     Pursuant to the principles set forth in *Jane Does 1-2 v. SFBSC Mgmt., LLC,* 771 F. Supp. 3d 990, 997 (N.D. Cal. 2015) (granting exotic dancers' motion to proceed anonymously and permitting present and future plaintiffs to sue under pseudonyms) and *Doe v. Ayers,* 789 F.3d 944 (9th Cir. 2014) (finding Plaintiff inmate could proceed under a pseudonym because of the severity of threatened harm, the reasonableness of his fears, and his vulnerability to retaliation), Plaintiff files this action under a fictitious name and seeks to proceed anonymously because: (1) she wishes to preserve her right to privacy; (2) there is significant social stigma attached to Plaintiff's occupation as an exotic dancer; (3) there is an inherent amount of risk of injury by current and former patrons associated with Plaintiff's profession; (4) Plaintiff would be hesitant to maintain this action if her name was permanently associated with Defendants; and (5) Plaintiff and other dancers working for the Defendants have already been verbally and physically threatened by the managers and owners of Red Dog.

16.     There is no prejudice to Defendants if Plaintiff files this action under a fictitious name and proceeds anonymously. In the ordinary course of business, Defendants identify dancers, including Plaintiff, through pseudonyms and stage names. The Fifth Circuit has recognized:

> It is customary in Defendants' business for employee-dancers, like Plaintiffs, to use pseudonyms and stage names for both security and privacy purposes. The use of these names allays any reasonable fear that proceeding anonymously would offend the "customary and constitutionally-embedded presumption of openness in judicial proceedings."

*NW Enterprises, Inc. v. City of Houston*, 352 F.3d 162 (5th Cir. 2003).

17. There are no due process concerns if Plaintiff proceeds anonymously, because Plaintiff will privately disclose her identity to Defendants to allow Defendants to assess her claims and mount a defense.

18. Defendant Red Dog is an Oklahoma for Profit Corporation with the service address in Oklahoma listed to Jason Mackey, 3217 Canyon Road, Oklahoma City, OK 73120.

19. Defendant R. Mackey, upon information and belief, is an owner and controller of Red Dog. He can be served with process at 3217 Canyon Road, Oklahoma City, OK 73120. Upon information and belief, R. Mackey used the assets of Red Dog for his personal use and caused the assets of Red Dog to be transferred to him without adequate consideration, and has withdrawn funds from the bank accounts of Red Dog for his own personal use. R. Mackey has used Red Dog as a mere shell, instrumentally, and/or conduit from which R. Mackey has carried on his business as if Red Dog has never existed, and that the activities of Red Dog were carried out without the required holding of directors' or shareholders' meetings, and no records or minutes of corporate proceedings are maintained.

20. Defendant J. Mackey, upon information and belief, is an owner and controller of Red Dog. He can be served with process at 3217 Canyon Road, Oklahoma

City, OK 73120. Upon information and belief, J. Mackey used the assets of Red Dog for his personal use and caused the assets of Red Dog to be transferred to him without adequate consideration, and has withdrawn funds from the bank accounts of Red Dog for his own personal use. R. Mackey has used Red Dog as a mere shell, instrumentally, and/or conduit from which R. Mackey has carried on his business as if Red Dog has never existed, and that the activities of Red Dog were carried out without the required holding of directors' or shareholders' meetings, and no records or minutes of corporate proceedings are maintained.

21. Throughout the relevant period, Defendants: (1) misclassified Dancers as independent contractors rather than employees; (2) required Dancers to split their tips with Defendants; (3) required Dancers to split their tips with Defendants' managers, doormen, floorwalkers, disc jockeys, and other employees who do not usually receive tips, by paying "tip-outs;" (4) did not pay Dancers any wages; (5) demanded improper and unlawful payments from class members; and (6) adopted and implemented employment policies that violate the FLSA and other age and hour laws.

22. Defendants knew or should have known that its business model was unlawful because money given to Dancers by patrons, and not taken into Defendants' gross receipts, is legally defined as a gratuity and is the sole property of each Dancer.

23. At all relevant times, Defendants owned and operated an enterprise engaged in interstate commerce and utilized goods which moved in interstate commerce, as defined in 29 U.S.C. § 203(r) and 203(s).

## FACTUAL ALLEGATIONS

24.     Defendants own and operate the Red Dog nightclub located at 6417 NW 10th St., Oklahoma City, Oklahoma.

25.     At all times relevant hereto, Defendants were, and are, "employers" involved in interstate commerce within the meaning of the FLSA, codified at 29 U.S.C. § 201, *et seq*.

26.     At all times relevant hereto, Defendants were, and are, engaged in commerce or in the production of goods for commerce as defined in Section 3(r) of the Act (29 U.S.C. § 203(r) and 203(s).

27.     All Dancers, including Plaintiff, worked at Red Dog and were Defendants' employees.

28.     Plaintiff, Jane Doe, worked at Red Dog from October of 2007 until February of 2017.

29.     All Dancers, including Plaintiff, were deprived of compensation for which they were entitled as a result of the following practices, decisions, and plans of Defendants:

    a.  Requiring Dancers and other employees to work without compensation;

    b.  Requiring Dancers and other employees to perform work without compensation during times for which they could not receive tips;

    c.  Refusing to compensate Dancers one and one half times minimum wage when their total hours worked exceeded 40 hours.

    d.  Requiring Dancers to share tips with non-tipped employees;

    e.  Requiring Dancers to pay fees for the right to work.

    f.  Requiring Dancers to work designated shifts.

g. Defining when Dancers could work based upon their perceived attractiveness. Workers who were perceived as more attractive by Red Dog were forced to work at night. Workers who were perceived as less attractive by Defendants were forced to work day shifts.

h. Fining Dancers when they missed an assigned shift or were forced to leave early.

30. Throughout the three years preceding the filing of this Complaint, Defendants employed and misclassified all Dancers at Red Dog as "independent contractors."

31. Defendants did not require Dancers at Red Dog to possess any specialized training, background, or education.

32. Defendants dictated the work schedules of Dancers and determined the specific times and manners in which Dancers interacted with customers and performed.

33. Defendants required Dancers to wear specific types of attire while performing.

34. Defendants required Dancers to attend unpaid staff meetings.

35. Defendants financed all advertising and licensing related to the business.

36. Defendants required Dancers to pay a specific amount, often referred to as a "house fee" or "bar fee," to qualify to work a given shift. The fee amount varied depending on the shift, the number of customers, and whether the event was promoted by Defendants.

37. Dancers were fined by Defendants for failing to work a scheduled shift and for leaving a shift early. Defendants fined Dancers who failed to "call in" prior to a

scheduled shift. Upon information and belief, these fines were often pocketed directly by Red Dog's Manager or the Defendants themselves.

38.     Defendants required Dancers to pay a specific "Disc Jockey" fee when so instructed by the Defendants. The amount and frequency of the imposed fee varied from event to event and night to night.

39.     Defendants required Dancers to pay a percentage of all gratuities they received to the Defendants.

40.     The fees imposed on Dancers by Defendants constitute illegal tip sharing arrangements with non-tipped employees and are also illegal kickbacks within the meaning of the FLSA.

41.     Defendants have never paid Dancers any amount or type of wage. The sole source of income for the Dancers during their employment was the portion of the gratuities they were permitted by the Defendants to keep.

42.     Because Defendants did not pay the Dancers wages, Defendants also did not pay Dancers one and one half times their regular rate of pay when Dancers exceeded forty hours worked in a work week.

43.     Defendants' practices of not paying Dancers compensation for work performed is a violation of the FLSA.

44.     Defendants knew or should have known they were in violation of the FLSA for misclassifying Dancers as independent contractors rather than employees.

45.     Plaintiff is informed and believes, and based thereon alleges, that each and every one of the acts and omissions asserted herein was performed by, and/or is attributable

to Defendants' acting as agents and/or employees, and/or under the direction and control of Defendants, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control, and were committed willfully within the meaning of the FLSA.

46.     As a direct and proximate result of the unlawful actions of Defendants, the Dancers suffered, and continue to suffer, from loss of earnings yet to be ascertained, but subject to proof at trial, and in amounts in excess of the minimum required for jurisdiction of this Court.

## COLLECTIVE ACTION ALLEGATIONS

47.     As alleged herein, Defendants are liable under the FLSA for willfully failing to properly compensate Dancers employed by Defendants during the three year period prior to commencement of this action, and as such, notice should be sent to past and present Dancers employed by Defendants during the three year period prior to initiation of this action, pursuant to 29 U.S.C. § 216(b).

48.     As alleged herein, Defendants deprived Dancers of compensation to which they are entitled as a result of the following practices, decisions, and plans of Defendants:

    a.  requiring Dancers and other employees to work without compensation;

    b.  requiring Dancers and other employees to perform work without compensation during times for which they could not receive tips;

    c.  refusing to compensate Dancers one and one half times minimum wage when their total hours worked exceeded 40 hours;

    d.  requiring Dancers to share tips with non-tipped employees;

e.  requiring Dancers to pay fees for the right to work.

f.  requiring Dancers to work designated shifts;

g.  defining when Dancers could work based upon their perceived attractiveness. Workers who were perceived as more attractive by Defendants were forced to work at night. Workers who were perceived as less attractive by Defendants were forced to work day shifts; and

h.  fining Dancers when they missed an assigned shift or were forced to leave early.

49.  Based thereon, Defendants have repeatedly and intentionally engaged in a similar practice, commonly and typically applied to the class of exotic dancers, of improperly depriving compensation to which such Dancers are entitled under the FLSA.

50.  Questions that are common among the FLSA Collective Action members include, but are not limited to:

a.  whether Defendants have and continue to unlawfully refuse to pay proper compensation to Dancers in violation of the FLSA, 29 U.S.C. § 201, *et seq.*, for all work performed;

b.  whether Defendants have and continue to unlawfully refuse to pay Dancers proper overtime compensation, in violation of the FLSA, 29 U.S.C. § 201, *et seq.*, through the aforementioned policies and practices; and

c.  whether the failure of the Defendants to pay such proper compensation is willful within the meaning of the FLSA.

51. There are numerous, similarly situated current and former dancers employed by Defendants in venues owned and/or operated by Defendants who have been subject to the same policies and practices alleged herein, in violation of the FLSA, and who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. Those similarly situated employees are known to Defendants and are readily identifiable by Defendants' records.

52. The FLSA applied to Plaintiff and the Class at all times in which they worked at Red Dog because Defendants employed Plaintiff and each member of the Class under the FLSA and other applicable laws.

53. At all relevant times, Plaintiff and each member of the Class were employees of Defendants under the FLSA and the applicable state wage and hour laws.

54. No exceptions to the application of the FLSA or state wage and hour laws apply to Plaintiff or the Class. For example, no class member has ever been a professional or artist exempt from the provisions of the federal or state employment statutes. The exotic dancing performed by class members while working at Red Dog does not require invention, imagination, or talent in a recognized field of artistic endeavor, and Defendants never compensated class members on a set salary, wage, or fee basis.

55. Class members' sole source of income while working at Red Dog was tips that patrons provided in exchange for dances.

56. At all relevant times, Defendants were employers of all class members under the FLSA and state wage and hour laws. Defendants directed the work of class members

and, directly or indirectly, exercised significant control over the wages, hours, and working conditions of the Dancers in the Class.

57.     Plaintiff consented to sue in this action pursuant to 29 U.S.C. § 216(b) and has executed a Notice of Consent. Additional potential collective action members may execute and file forms consenting to opt-in to join as a Plaintiff in the instant action. A copy of the "Notice of Consent" is attached hereto as Exhibit 1.[2]

58.     Plaintiff, on behalf of herself and others similarly situated, both current and former employees, brings this collective action against Defendants under the FLSA, 29 U.S.C. § 201, *et seq.* for failure to pay minimum wage and overtime compensation.

59.     Plaintiff and others similarly situated (the "FLSA Collective") are individuals who are current and former employee-dancers of the Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

## CLASS ACTION ALLEGATIONS

60.     Plaintiff bring this lawsuit on behalf of herself and the proposed Class members under Fed. R. Civ. P. 23(b)(3). The proposed Class consists of all workers at Defendants' Red Dog nightclub.

61.     ***Numerosity.*** The members of the Class are so numerous that their individual joinder is impracticable.

---

[2] Jane Doe's executed Notice of Consent has not been attached to this pleading due to her need for anonymity, but Plaintiff is willing to provide her Notice of Consent to Defendants' counsel and this Court once a suitable protective order has been entered in this action.

62.     ***Existence and Predominance of Common Questions of Law and Fact.***
Common questions of law and fact exist as to all members of the Class and predominate
over any questions affecting only individual Class members.

63.     ***Typicality.*** Plaintiff's claims are typical of the claims of the members of the
Class and Plaintiff has the same claims as those of the other Class members.

64.     ***Adequacy of Representation.*** Plaintiff will fairly and adequately protect the
interests of the members of the Class. Plaintiff has retained counsel highly experienced in
complex consumer class action litigation and Plaintiff intend to prosecute this action
vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

65.     ***Predominance and Superiority.*** The requirements of predominance and
superiority are met under Fed. R. Civ. P. 23(b)(3).

## COUNT I
**Failure to pay Wages in Violation of the Minimum Wage Provisions of FLSA**

66.     Plaintiff realleges and incorporates by reference the allegations contained in
the paragraphs above as if fully set forth herein.

67.     This claim arises from Defendants' willful violation of the FLSA for failure
to pay a minimum wage to Plaintiff and the FLSA Collective.

68.     At all times relevant, Defendants have been, and continue to be, an
"employer" engaged in interstate commerce and/or the production of goods for commerce,
within the meaning of the FLSA, 29 U.S.C. § 201, *et seq*. Defendants have employed and
continue to employ exotic dancers, including Plaintiff and members of the FLSA
Collective, who engage or engaged in commerce or in the production of goods for

- 14 -

commerce. At all times relevant, upon information and belief, these Defendants have had annual gross sales or have done business in excess of $500,000.00.

69.     The minimum wage provisions of the FLSA apply to Defendants and protect Plaintiff and the FLSA Collective. Defendants were required to compensate all Dancers for all work performed as non-exempt employees.

70.     Pursuant to the FLSA, 29 U.S.C. § 206, Plaintiff and the FLSA Collective were entitled to be compensated at a rate of $7.25 per hour. The Dancers were employees of the Defendants and the Defendants were engaged in commerce.

71.     Defendants were not allowed to avail themselves of the federal tipped minimum wage rate under the FLSA because Defendants provided no notice to Dancers of an intention to take a tip credit and because Dancers were required by Defendants to pool tips with non-tipped employees, specifically members of the management and staff of Red Dog.

72.     Defendants, pursuant to its policies and practices, refused and failed to pay a minimum wage to Plaintiff and the FLSA Collective.

73.     Such acts were committed knowingly and willfully, within the meaning of 29 U.S.C. § 255(a), with a conscious disregard for the rights of the Plaintiff and persons similarly situated under federal wage and hour laws, by which such acts have deprived the Plaintiff and persons similarly situated of their property and legal rights.

74.     As a result of the aforementioned violations, Plaintiff and potential collective action members have suffered, and continue to suffer, substantial losses related to the use and enjoyment of such wages, lost interest on such wages, and have incurred expenses and

attorney's fees in seeking to compel Defendants to fully perform its obligations under the law, all to their respective damage in amounts according to proof at the time of trial, but in excess of the minimum jurisdiction of this Court.

75.     Pursuant to the FLSA, 29 U.S.C. § 201, *et seq*., and including, 29 U.S.C. § 216(b), Plaintiff is legally entitled to recover unpaid wages at their regular rate, plus interest, liquidated damages, attorney's fees, and costs of suit.

**COUNT II**
**Failure to Pay Overtime Wages in Violation of the Overtime Provisions of the FLSA**
**29 U.S.C. § 201, *et seq*.**

76.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

77.     Pursuant to the FLSA, 29 U.S.C. § 201, *et seq*., Defendants are and/or were required to compensate all non-exempt employees for all overtime work performed at a rate of pay not less than one and one half the regular rate of pay for work performed in excess of 40 hours in a work week.

78.     Defendants, pursuant to their policies and practices, refused and failed to pay any wage at all to Plaintiff and the FLSA Collective, including failing to pay a rate of not less than one and one half the regular rate of pay when Plaintiff and the FLSA Collective worked in excess of 40 hours in a work week.

79.     Such acts were committed knowingly and willfully, within the meaning of 29 U.S.C. § 255(a), and with a conscious disregard of the rights of the Plaintiff and persons similarly situated under federal wage and hour laws, and such acts have deprived Plaintiff and persons similarly situated of their property and legal rights.

80.     As a result of the aforementioned violations, Plaintiff and potential collective action members have suffered, and continue to suffer, substantial losses related to the use and enjoyment of such wages, lost interest on such wages, and have incurred expenses and attorney's fees in seeking to compel Defendants to fully perform their obligations under the law, all to their respective damage in amounts according to proof at the time of trial, but in excess of the minimum jurisdiction of this Court.

81.     Pursuant to the FLSA, 29 U.S.C. § 201, *et seq*., and including, 29 U.S.C. § 216(b), Dancers are legally entitled to recover unpaid balances of overtime compensation, plus interest, liquidated damages, attorney's fees, and costs of suit.

## COUNT III
### Violation of Oklahoma Wage and Hour Laws, O.S. tit. 40, § 160, 165.2, 197.1, *et seq.* (Failure to pay Minimum Wages)

82.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs above as though fully set forth herein.

83.     At all relevant times, Plaintiff and members of the Class were employees of the Defendants within the meaning of O.S. tit. 40, § 165.01(2).

84.     At all relevant times, Defendants were employers of all members of the Class within the meaning of O.S. tit. 40, § 165.01(1).

85.     The Oklahoma Minimum Wage Act requires that all employees be paid minimum wages by their employers. O.S. tit. 40, § 197.1  et. seq.

86.     Under Oklahoma law, an employer cannot give credit exceeding 50% for tips or gratuities towards meeting the minimum wage. Further, employers are not allowed to take any portion of an employee's tips.

87.     Any agreement between an employee and employer that has the effect of an employee receiving less than minimum wage is invalid.

88.     By requiring class members to share their tips with Defendants and/or their employees, Defendants violated Oklahoma law.

89.     Defendants failed to pay Plaintiff and the Class any minimum wages for their labor during the relevant time period in violation of Oklahoma law. All unpaid minimum wages must be paid to the Class.

## COUNT IV
## Unjust Enrichment

90.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs above as though fully set forth herein.

91.     Because of the unlawful conduct described herein, Defendants have been unjustly enriched at the expense of Plaintiff and the other members of the Class.

92.     Specifically, Defendants' unfair and unlawful actions, as described herein, have enabled Defendants to receive money and other benefits in violation of the law at the expense of Plaintiff and the other members of the Class.

93.     Defendants' receipt and retention of this financial benefit is unfair and improper under the circumstances.

94.     As such, Defendants should be required to disgorge the money retained as a result of its unjust enrichment.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for:

A.      Judgment against Defendants for an amount equal to Plaintiff's unpaid back wages, overtime pay, and unlawful kickbacks;

B.      Judgment against Defendants for their willful violations of the various provisions of FLSA;

C.      Enjoining Defendants and their employees, officers, directors, agents, successors, assignees, affiliates, merged or acquired predecessors, parent or controlling entities, subsidiaries and all other persons acting in concert or participation with them from their unlawful acts.

D.      Disgorgement of monies obtained through unjust enrichment.

E.      An amount equal to the unpaid wages and kickback damages as liquidated damages;

F.      An award of prejudgment interest;

G.      All costs and attorney's fees incurred in prosecuting these claims;

H.      Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: February 22, 2017                    Respectfully Submitted,


/s/ William B. Federman_____
William B. Federman (OBA #2853)
Joshua D. Wells (OBA #22334)

FEDERMAN & SHERWOOD
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone:  (405) 235-1560
Facsimile:  (405) 239-2112
wbf@federmanlaw.com
jdw@federmanlaw.com

**_Attorneys for Plaintiff and the Class_**